***NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| L.V. o/b/o G.V., her minor child | : | |
| Plaintiff, | : | |
|  | : | Case No. 13-2595 |
| v. | : | |
|  | : | **OPINION** |
| MONTGOMERY TOWNSHIP SCHOOL DISTRICT BOARD OF EDUCATION, | : | |
| Defendant. | : | |

**WOLFSON, United States District Judge**:

Before the Court is a Verified Complaint filed by Plaintiff L.V. ("Plaintiff" or "L.V."), on behalf of her minor child, G.V. ("G.V."), seeking injunctive relief in the form of an order directing Defendant Montgomery Township School District Board of Education ("Defendant" or the "District") to pay for costs associated with G.V.'s placement in the school of L.V.'s choice. In the Verified Complaint, Plaintiff alleges that the District violated the Individualized Education Program ("IEP") for G.V. for the 2012-2013 school year, has not agreed to provide G.V. with an appropriate education, and refuses to fund an out-of-district placement for G.V. at a school of L.V.'s choice. Plaintiff's claims are brought pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. In her application for emergent relief, L.V. contends that she is excused from exhausting her administrative remedies under the IDEA because of the urgent nature of G.V.'s circumstances, including alleged irreparable harm, and the Administrative Law Judge's ("ALJ") inability to provide Plaintiff with the relief she seeks. For the reasons that follow, the Court determines that Plaintiff is not excused from exhausting

1

administrative remedies, and, accordingly, denies Plaintiff's request for emergent relief and dismisses the Verified Complaint without prejudice.

I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following relevant facts are drawn from Plaintiff's Verified Complaint and supporting record, and are undisputed unless otherwise noted.

G.V. is a 12 year old boy diagnosed with autism. Compl. ¶ 6. Since beginning Kindergarten with the District, G.V. has had IEPs in place for each school year. Id. While G.V. was in elementary school, he was placed in an "inclusive learning environment," where he was exposed to the core curriculum with the help of an aide. Id. ¶ 7. G.V. then entered the Lower Middle School in the District for the 5th and 6th grades. Id. ¶¶ 8-9. At Lower Middle School, Plaintiff contends that that G.V.'s IEP was violated because he was (i) not exposed to the core curriculum, (ii) denied physical education, (iii) not allowed to participate in "specials," (iv) isolated from his peers, (v) discriminated against on account of his disability, and (vi) used as a "test subject" in an experiment program. Id. In sum, Plaintiff alleges that Lower Middle School was an "unsafe learning environment" where G.V. sustained several injuries, both accidental and not accidental. See id. ¶¶ 8-10. In light of these alleged transgressions, L.V. unilaterally removed G.V. from Lower Middle School in November 2012. Id. ¶ 11; L.V. Cert., Apr. 24, 2013, at ¶ 2. At that time, L.V. and the District disputed how to proceed with G.V.'s education, with the District initially declining to provide G.V. with home instruction at the District's expense. See Compl., ¶ 12.[1]

In January 2013, L.V. and the District agreed to amend the IEP, with the District to provide ten hours per week of limited home instruction to G.V. See id. ¶ 13. However, L.V.

---

[1] Plaintiff certified that the District considered seeking truancy charges against L.V. See L.V. Cert., Apr. 24, 2013, at ¶ 2.

alleges that the District has actually provided approximately two to four hours per week. Id. ¶ 13. While the parties dispute whether the failure to provide the agreed upon instruction was the fault of L.V. or the District, the District has indicated that it is currently willing and able to provide G.V. with ten hours of instruction per week, as well as to make-up the missed hours. See Aff. of Eric. L. Harrison, Esq., ¶ 9.

Around the same time that L.V. removed G.V. from Lower Middle School, L.V. filed a due process petition and the first of several motions for emergent relief with the ALJ.[2] See Compl., ¶ 16; District Opp. to OTSC, Ex. A. (due process action). On March 6, 2013, the ALJ denied L.V.'s motion for emergent relief, finding that no emergency existed. See Decision of ALJ Reba, dated May 8, 2013, at 2.[3] The ALJ also denied, for the same reason, the District's emergent motion to require L.V. to execute authorizations to release G.V.'s school records so the District could explore other placement options for G.V. Id. L.V. filed a renewed motion for emergent relief on March 19, 2013, raising the same arguments as her previous motion and also incorporating the allegations that the District was failing to provide G.V. with the agreed upon ten hours per week of home instruction. See id. On May 8, 2013, the ALJ denied L.V.'s renewed motion for emergent relief, concluding again that L.V. had not met her burden of demonstrating that any emergency existed – and, specifically, of demonstrating that G.V. will suffer irreparable harm without obtaining the relief sought by L.V. Id. at 4-5. The ALJ further noted: "A full hearing, at which both parties will offer testimony from experts in support of their positions, is necessary to resolve the substantive issues in this case . . . ." Id. at 5.

---

[2]   L.V.'s position before the ALJ is virtually the same to that in the instant matter – that the District has failed to provide G.V. an education in accordance with his IEP, and that the District should pay the costs of G.V.'s immediate placement in East Amwell Township School District. See generally Decision of ALJ Reba, dated May 8, 2013.

[3]   ALJ Reba's decision is attached to Plaintiff's letter, dated May 8, 2013.

3

While L.V.'s second motion for emergent relief was pending before the ALJ, on April 24, 2013, L.V. filed the instant Verified Complaint and an Order to Show Cause ("OTSC") with this Court, based on the allegations that the District was failing to satisfy G.V.'s IEP, and seeking relief in the form of an order directing the District to pay for the costs associated with G.V.'s placement in the East Amwell Township School District ("East Amwell"). In her initial OTSC brief, L.V. argued that she should be excused from exhausting her administrative remedies because of the urgency of the situation with G.V. and the inability of the ALJ to render a prompt decision on the matter, i.e., that it would be futile to require exhaustion. This Court convened a conference call on that same day with the parties, denied the OTSC, and ordered both parties to supplement the record on the issue of exhaustion, which the parties timely did.

## II.   STANDARD OF REVIEW

"When subject matter jurisdiction is challenged under [Federal Rule of Civil Procedure] 12(b)(1), the plaintiff must bear the burden of persuasion."[4] Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 191 n.4 (3d Cir. 2011). A jurisdictional challenge is a factual challenge if "it concerns not an alleged pleading deficiency, but rather the actual failure of [plaintiff's] claims to comport with the jurisdictional prerequisites." U.S. ex rel. Atkinson v. PA. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007). The trial court is free to weigh and evaluate the evidence in determining whether its jurisdiction has been demonstrated. Symczyk, 656 F.3d at 191 n.4 (citing Mortensen v. First Federal Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)); see

---

[4]   Neither party provides the Court with the appropriate standard of review in this matter. The Third Circuit, however, has considered claims analogous to Plaintiff's under a Rule 12(b)(1) standard, which I find appropriate in this matter as well. See Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994) (explaining that the IDEA "grants subject matter jurisdiction to the district courts" in the form of review of the administrative proceedings); id. at 779 (noting that Rule 12(b)(1) is the appropriate procedure vehicle to determining whether a plaintiff has met her threshold burden of showing jurisdiction).

also See Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994) ("In order to meet that [jurisdictional] threshold [to bring an IDEA claim in the district court], plaintiffs must provide affidavits from competent professionals along with other hard evidence that the child faces irreversible damage if the relief is not granted. If plaintiffs meet that burden but the defendant in connection with a 12b(1) motion to dismiss presents convincing evidence that such harm will not occur, the court should not proceed, but rather must require plaintiffs to exhaust their administrative remedies.").

Further, the court is "permitted to make factual findings, beyond the pleadings, that [a]re decisive to determining jurisdiction." CNA v. United States, 535 F.3d 132, 145 (3d Cir. 2008). However, a court should not rule on the merits of a plaintiff's case under this procedural vehicle in light of the fewer procedural protections accorded to a plaintiff under the 12(b)(1) standard. See id. at 144-45 ("By requiring less of a factual showing than would be required to succeed at trial, district courts ensure that they do not prematurely grant Rule 12(b)(1) motions to dismiss claims in which jurisdiction is intertwined with the merits and could be established, along with the merits, given the benefit of discovery.").

**III.    DISCUSSION**

The threshold issue in this matter is whether the Verified Complaint is properly before the Court in light of the fact that the underlying administrative process is ongoing. L.V. does not dispute that (i) a due process hearing is proceeding before the ALJ; (ii) she filed similar motions for emergent relief before the ALJ, seeking relief virtually identical to the relief sought in the Verified Complaint,[5] which have been denied, see Decision of ALJ Reba, dated May 8, 2013; or

---

[5]    L.V. argues that some of her claims in the Verified Complaint are not before the ALJ and/or cannot be remedied by an administrative law forum. See Pl. Second OTSC Br., 21 ("Petitioner alleges in its [*sic*] Verified Complaint, violations of Federal law . . . not currently

(iii) under normal circumstances, a party bringing a claim under the IDEA must exhaust her administrative remedies prior to filing a complaint in federal court. See Pl. Second OTSC Br., 16. Rather, L.V. contends that she is excused from exhausting her administrative remedies prior to filing this action because it is futile for her to continue to pursue her claims before the ALJ, and doing so would also cause irreparable harm to G.V.[6] The District opposes L.V.'s emergent motion on the grounds that L.V. has failed to demonstrate that any exception to the exhaustion requirement applies, and asks this Court to deny without prejudice L.V.'s claims until the ALJ has rendered a final decision on the matter.

---

being addressed by the administrative law forum and the remedies requested are not ones that administrative law forums can impose . . . ."). The sole emergent relief that L.V. seeks, however – and the apparent principal claim in her Verified Complaint – is an order directing the District to pay the costs associated with G.V. attending school in East Amwell. See id. at 33 ("Petitioner respectfully requests that this Court grant her Order to Show Cause and place G.V. in at least an interim placement at the East Amwell School."); see also Pl. Letter, dated May 8, 2013, ¶ 5 ("Petitioner's only basis for her motions for emergent relief is to get G.V. into school, at least pending the out of this Due Process hearing at the District's expense . . . ."). Accordingly, for the purposes of determining whether this Court has jurisdiction over Plaintiff's Verified Complaint, I do not address L.V.'s other "Federal law" claims as those are premature. Indeed, after the termination of the administrative law proceedings, L.V. could still likely file her additional claims in federal court should she so choose. See 20 U.S.C. § 1415(i)(2)(A). I make no ruling on the merits of those claims at this time.

[6] L.V. also argues that she is excused from the exhaustion requirement because the issue presented in her Verified Complaint is purely a legal question and because the administrative law forum cannot grant the relief requested. I have already rejected this latter contention supra, footnote 5. I also reject L.V.'s argument that this is a purely legal issue. Determining whether the District violated the IEP – justifying L.V.'s decision to remove G.V. from Lower Middle School – and/or whether East Amwell is an appropriate placement for G.V. are necessarily fact-based determinations, requiring expert review and factual testimony  Moreover, contrary to L.V.'s position, the factual record is not fully developed in this case because not all expert reports have been presented to the ALJ and the due process hearing before the ALJ is ongoing. See Decision of ALJ Reba, dated May 8, 2013, at 5. Thus, for this reason as well, L.V. has not demonstrated that she is excepted from the administrative exhaustion requirement. See W.B. v. Matula, 67 F.3d 484, 496 (3d Cir. 1995) (finding exhaustion not required where the factual record in the administrative proceeding was fully developed, even if proceeding had not terminated), abrogated on other grounds by A.W. v. Jersey City Pub. Sch., 486 F.3d 791 (3d Cir. 2007).

In Komninos, the Third Circuit explained that a party bringing a claim under the IDEA may "bypass the administrative process," where, inter alia, exhaustion "would be futile or inadequate," or "would work severe or irreparable harm upon a litigant." Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994) (internal quotation marks omitted). The party seeking relief from exhaustion bears the burden of proof. Honig v. Doe, 484 U.S. 305, 327 (1988).

With respect to "futility," courts in this district have recognized that this exception applies when the administrative process available to a party is flawed or otherwise deficient. As one court has clarified: "To demonstrate futility in the administrative process, '[a party] must show that New Jersey's administrative process operates in a manner that is contrary to IDEA requirements. Merely showing that [a] child's education program was inadequate is not enough, as properly functioning administrative procedures can remedy such a problem.'" MG ex rel. LG v. Caldwell-W. Caldwell Bd. of Educ., 804 F. Supp. 2d 305, 314 (D.N.J. 2011); see also id. ("[I]n discussing the futility exception the Third Circuit has focused on instances where plaintiffs 'allege systemic legal deficiencies and, correspondingly, request system-wide relief that cannot be provided (or even addressed) through the administrative process.'" (quoting Beth V. by Yvonne v. Carroll, 87 F.3d 80, 89 (3d Cir.1996))); W.B. v. Matula, 67 F.3d 484, 496 (3d Cir. 1995) ("[W]here the relief sought in a civil action is not available in an IDEA administrative proceeding, recourse to such proceedings would be futile and the exhaustion requirement is excused."), abrogated on other grounds by A.W. v. Jersey City Pub. Sch., 486 F.3d 791 (3d Cir. 2007).

Here, L.V.'s futility argument centers on her assertion that the administrative process is

proceeding too slowly to grant G.V. the relief he allegedly needs.[7]  L.V., however, has not shown why the administrative process is inadequate, or suffers from any systemic flaw that would preclude her from obtaining the relief she seeks.  Indeed, L.V. has not argued that the ALJ cannot grant her the specific relief she is seeking with respect to G.V.'s placement in East Amwell.  Instead, L.V. bases her futility argument on the fact that the ALJ has denied her motions for emergent relief.  This is not a proper futility argument; rather, as discussed infra in this Opinion, L.V.'s futility argument is merely a recasting of her irreparable harm argument – that the ALJ's failure to grant her emergent motions is causing G.V. to sustain irreparable harm. Mere disagreement with the outcome of an ALJ's interim decisions in the administrative hearing process is insufficient to satisfy the futility exception.  See W.B. v. Matula, 67 F.3d at 496; cf. J.T. ex rel. A.T. v. Dumont Pub. Sch., __ F. A'ppx __, __, 2013 WL 1777257, at *8 (3d Cir. Apr. 26, 2013) (declining to apply futility exception based on plaintiffs' unsubstantiated "unsatisfactory experience with the administrative process"); Falzett v. Pocono Mountain Sch. Dist., 150 F. Supp. 2d 699, 703 (M.D. Pa. 2001) ("Even the defendant's refusal to participate in the due process hearing does not make the administrative process futile." (citing Rose v. Yeaw, 214 F.3d 206, 212 (1st Cir. 2000))).  Accordingly, I find that L.V. has not shown that she should be excused from the exhaustion requirement based on futility.

   L.V.'s other main argument is that G.V. will suffer irreparable harm if the interim relief sought – G.V.'s placement in East Amwell – is not immediately granted.  As noted above, the

---

[7]  L.V. also argues that G.V.'s IEP expired on April 8, 2013, "leaving G.V. without any protection under the law . . . ."  Pl. Second Br., 8.  It is unclear how this factors into L.V.'s argument, although L.V. seems to rely on this fact to support the alleged urgency of the matter.  In any event, the District has not indicated to this Court or, it appears, the ALJ, that the expiration of the IEP has placed G.V. in any jeopardy or otherwise altered the nature of the proceedings before the ALJ.  Indeed, the District has represented to the Court that it fully intends to be bound by the agreement made in the modified IEP by providing educational services to G.V. at home.  See Aff. of Eric. L. Harrison, Esq., ¶ 9.

Third Circuit adopted an exception to the exhaustion requirement where resort to the administrative process "would work severe or irreparable harm upon a litigant." Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d at 778. However, in adopting this exception, the Komninos court "caution[ed] that it is to be sparingly invoked." Id. at 779. In order to make out a claim of irreparable harm to excuse the administrative exhaustion requirement, a party "must provide a sufficient preliminary showing that the child will suffer serious and irreversible mental or physical damage (e.g., irremediable intellectual regression) before the administrative process may be circumvented." Id. This must be accomplished through "affidavits from competent professionals along with other hard evidence that the child faces irreversible damage if the relief is not granted." Id. In that connection, the Komninos court clarified that it is doubtful that a finding of "'regression' per se constitutes such irreparable harm as to justify an exception to the exhaustion requirement," unless a party can show that the regression will be irreversible. Id.[8]

In support of her argument that G.V. will be irreparably harmed if he is not placed in East Amwell, at least for the interim, L.V. has submitted an affidavit from her expert, Dr. Ernst Vanbergeijk,[9] as well as a letter from Dr. Audrey E. Mars, the current treating physician of G.V. According to Dr. Vanbergeijk, G.V.'s prolonged absence from an inclusive educational environment and lack of ancillary or support services is causing G.V. to suffer irreparable harm.

---

[8]  Additionally, "whether the threshold requirements have been met [is left] to the discretion of the district court. . . . If [a party] satisfy[ies] the preliminary inquiry, the district court should then proceed with the traditional preliminary injunction procedures." Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d at 779. Because, as explained above, I determine that L.V. has not met the threshold requirements of showing irreparable injury, I need not engage in an analysis of the traditional preliminary injunction procedures.

[9]  L.V. does not explain Dr. Vanbergeijk's qualifications or the capacity in which he rendered his opinion in this case. Review of Dr. Vanbergeijk's curriculum vitae reveals that he has substantial experience and credentials in the fields of social work and developmental disorders. Moreover, the District does not appear to challenge Dr. Vanbergeijk's qualifications.

See Vanbergeijk Aff., 1-2.[10] Dr. Vanbergeijk further swore that without this environment or services, G.V. becomes more "habituated to staying at home making a transition . . . more and more difficult, if not impossible." Id. at 2. In the same paragraph, however, Dr. Vanbergeijk explained that these transitions can cause "regression in behavior." Id. Moreover, Dr. Vanbergeijk has based all of his conclusions regarding G.V. on a review of G.V.'s records; in forming these opinions, Dr. Vanbergeijk did not review or meet with G.V. personally. See id. at 1. In contrast to Dr. Vanbergeijk's conclusions, Dr. Mars concluded that G.V.'s "extended absence of school may lead to regression and loss of skills . . . ." Dr. Mars. Letter, dated April 30, 2013 (emphasis added).[11] Significantly, Dr. Mars did not conclude or opine that G.V would suffer irreparable harm if he was not immediately placed in a school environment, only that he might regress.

Based on the opinions of Dr. Mars and Dr. Vanbergeijk, I find that L.V. has failed to demonstrate that G.V. will suffer irreparable harm if immediate relief is not granted. The Third Circuit has made clear that in order to avoid the administrative process, the alleged harm must be irreparable; mere regression is not sufficient. See Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d at 779. Here, L.V. has failed to carry her burden of showing that G.V. will suffer anything more than the possible regression and loss of skills. Dr. Vanbergeijk's opinion is unclear as to whether Dr. Vanbergeijk believes that G.V. will suffer irreparable harm or mere regression. Moreover, Dr. Vanbergeijk's opinion is entitled to less weight because his conclusions are based solely on review of G.V.'s records. On the other hand, G.V.'s current treating physician did not opine that G.V.'s prolonged absence from school would cause irreparable harm. Given this scant and contradictory evidence, and the Third Circuit's

---

[10]  The Vanbergeijk Affidavit is attached as Exhibit A to Plaintiff's Second OTSC Brief.
[11]  Dr. Mars's letter is attached as Exhibit B to Plaintiff's Second OTSC Brief.

admonition that the irreparable harm exception to the administrative exhaustion requirement under the IDEA is to be employed sparingly, see id., L.V. has not met her burden of showing that her motion is properly before this Court.

In sum, L.V. has failed to demonstrate that her requested emergent relief is properly before this Court in light of the ongoing administrative proceedings below. The circumstances of this case do not fit within any of the limited exceptions to the requirement that administrative proceedings must be exhausted prior to bringing an action in federal court under the IDEA. Nothing in the record indicates that pursuing administrative remedies would be futile or cause G.V. to suffer irreparable harm. Indeed, the common thread in L.V.'s arguments before this Court is that she simply disagrees with the ALJ's decisions in this matter. This is not a basis to except L.V. from the administrative exhaustion requirement. See W.B. v. Matula, 67 F.3d at 496.[12]

## IV. CONCLUSION

For these foregoing reasons, the Court finds that Plaintiff has not exhausted her administrative remedies as required under the IDEA, and that Plaintiff does not meet any of the exceptions to this requirement that would allow the Court to have jurisdiction over this matter while it is still pending before the ALJ. As a result, Plaintiff's request for emergent relief is DENIED and the Verified Complaint is DISMISSED without prejudice.

An order will be entered consistent with this Opinion.

---

[12] Furthermore, nothing in the record supports granting the specific relief that L.V. seeks – placing G.V. in East Amwell and requiring the District to cover any associated costs. There has been no determination by the District, the ALJ, or any court that East Amwell is an appropriate placement for G.V. or that it can adequately fulfill the requirements of G.V.'s IEP.

11

Dated:  June 5, 2013 /s/    Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.